UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. McCLURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12-CV-00361-AGF |
| | ) | |
| MALLINCKRODT, INC., et al., | ) | Lead Case |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs in these consolidated actions seek damages under the Price-Anderson Act

("PAA") as amended, 42 U.S.C. §§ 2210, et seq., for injuries allegedly sustained as a result

of multiple decades of exposure to hazardous, toxic, and radioactive substances handled by

Defendants Mallinckrodt, Inc. and Cotter Corporation at various times between 1942 and

1973, at or near Plaintiffs' residences in north St. Louis County, Missouri.

Mallinckrodt and Cotter have each moved to dismiss Plaintiffs' complaints for

failure to state a claim.   (Doc. Nos. 210, 212, 221 & 252.)[1]   For the reasons set forth

below, Cotter's motion to dismiss shall be granted in part and denied in part, and

Mallinckrodt's motions to dismiss shall be denied.

---

[1]     After Defendants filed their motions to dismiss, Plaintiffs filed and consolidated
several additional cases with the lead case.   (Doc. Nos. 217, 243 & 249.)   Mallinckrodt
filed separate motions to dismiss the newly consolidated cases, incorporating in each its
motion to dismiss the lead case.   (Doc. Nos. 221 & 252.)   Cotter, on the other hand, styled
its later motions as motions for joinder, requesting that the Court deem its motion to
dismiss and related briefing filed in the lead case as applicable to the newly consolidated
cases.   (Doc. Nos. 222 & 253.)   Therefore, the Court will grant Cotter's motions for
joinder and deem Cotter's motion to dismiss as applicable to all cases consolidated with the
lead case to date.

The lead case in these consolidated actions was filed on February 28, 2012. The lead case and a few of the early consolidated cases originally named several Defendants, but many of these Defendants were subsequently dismissed. The original complaints in these early cases were substantially similar to the current complaints, except in a few important respects. One difference was that the original complaints contained several state law claims, in addition to a public liability action under the PAA. Another difference was that the complaints failed to plead an essential element of the PAA public liability action, namely, breach of an applicable federal nuclear safety standard. For these reasons, the Court dismissed the original complaints. (Doc. No. 141.) The state law claims were dismissed with prejudice, as preempted by the PAA. But Plaintiffs were given leave to amend their PAA public liability actions to plead breach of an applicable federal safety standard.

Plaintiffs in these early cases thereafter filed first and second amended complaints. Several other new lawsuits were also filed and consolidated with the lead case. The current complaints all name Mallinckrodt and Cotter as the sole Defendants; contain a single claim, a public liability action under the PAA; and are virtually identical with respect to the alleged conduct of Defendants and the theories of liability.

Plaintiffs allege that from 1942 to 1957, under contract with the federal government in connection with the Manhattan Project, Mallinckrodt refined and processed more than 50,000 tons of uranium at a facility in downtown St. Louis, Missouri, known as the St. Louis Downtown Site ("SLDS"). Plaintiffs further allege that from 1946 to 1957,

Mallinckrodt transported radioactive waste materials from SLDS to a 21.7-acre tract of land, designated as the St. Louis Airport Site ("SLAPS"), in north St. Louis County, Missouri, and that Mallinckrodt also disposed of and stored the radioactive waste materials at SLAPS during this time. Plaintiffs allege that "Mallinckrodt's acts and omissions between approximately 1942 and 1957 caused the release of hazardous, toxic, and radioactive substances into the environment along haul routes and in north St. Louis County, Missouri, thereby contaminating the air, soil, surface water, and ground water along the haul routes and in the area surrounding SLAPS[.]" *See, e.g.*, Case No. 4:12-cv-00361-AGF, Doc. No. 201 at 3.[2]

Plaintiffs allege that the hazardous, toxic, and radioactive waste materials were removed from SLAPS in various stages throughout the 1960's, and transported to a site on Latty Avenue in Berkeley, Missouri (later known as the Hazelwood Interim Storage Site ("HISS")) for storage. Then in 1969, Cotter purchased the waste materials, and between 1969 and 1973, Cotter stored and processed the waste, and transported the waste to West Lake Landfill in north St. Louis County, Missouri. Plaintiffs allege that "Cotter's acts and omissions between approximately 1969 and 1973 caused the release of hazardous, toxic, and radioactive substances into the environment in north St. Louis County, Missouri, thereby contaminating the air, soil, surface water, and ground water in the area." (Doc. No. 201 at 5.)

---

[2] Unless otherwise indicated, all citations to documents in the record refer to documents filed in the lead case, No. 4:12-cv-00361-AGF.

Plaintiffs allege that Defendants' transportation and migration of the radioactive waste to and from SLDS, SLAPS, and HISS also spread radioactive substances along haul routes to nearby Vicinity Properties ("VPs"), including properties along Coldwater Creek. Plaintiffs allege that the radioactive materials and their by-products are "highly toxic and carcinogenic" to humans. Further, "because of the long half-life of the radioactive substances involved," Plaintiffs allege that persons living, working, or recreating near SLAPS, HISS, and the VPs (collectively, the "North St. Louis County Sites") continued to be exposed to dangerous substances for decades after the alleged misconduct, and will continue to be exposed to such substances in the future. (Doc. No. 201 at 24-25.)

The complaints state that the first federal regulations creating safety standards for the release of radioactive materials did not become effective until 1957, and there were no federal safety standards governing permissible levels of radiation exposure prior to 1957. But after 1957 and until approximately 1989, Plaintiffs allege that "the numerical radiation dose threshold regarding members of the general public included a 500 millirem per year limit." (Doc. No. 201 at 5.) Plaintiffs allege that after 1989, the numerical radiation dose threshold regarding members of the general public dropped to 100 millirem per year. *Id.*

According to the complaints, in October 1989, the federal government added SLDS and the North St. Louis County Sites to the Formerly Utilized Sites Remedial Action Program, an environmental remediation program addressing radiological contamination generated by development of atomic weapons in the 1940's and 1950's. Plaintiffs further allege that the Department of Energy issued reports in 1994 and 1995 confirming the

presence of contamination, including widespread radioactive contamination, in surface and subsurface soils at the North St. Louis County Sites.

Plaintiffs in each complaint allege that, as a direct result of Defendants' reckless, negligent, and/or grossly negligent conduct, Plaintiffs were exposed to radioactive substances that were released by Defendants into the environment, including the air, water, and soil, in and around Plaintiffs' residences near the North St. Louis County Sites, and that this exposure caused various forms of cancer and, in some cases, death. Plaintiffs allege that they engaged in different activities in or near Coldwater Creek, including attending school in the area, participating in outdoor and recreational activities, or having had their basements flooded by the creek.

Almost every Plaintiff specifically alleges that, "[a]s a result of Defendants' acts and omissions," his or her "average annual exposure to radiation" during the years he or she lived, worked, or recreated in close proximity to the North St. Louis County Sites "was in excess of 500 millirem." *See, e.g.*, Doc. No. 201 at 6-14. The specific substances to which Plaintiffs claim they were exposed "include, but were not limited to, the natural forms and various isotopes of cesium, thorium, radium, uranium, and radon." *Id.* at 25. Plaintiffs claim that "[s]ome of these substances were used in the conduct of Defendants' operations, and some were created as by-products or decay ('daughter') products." *Id.*

Plaintiffs do not plead the dates on which they were diagnosed with their various forms of cancer, instead pleading only that they were diagnosed "[s]ubsequently" at some point after living, working, or recreating in close proximity to the North St. Louis County Sites. (Doc. No. 201 at 6-13.) Plaintiffs do plead the dates on which some of their

decedents died, and for many of those decedents who died more than three years prior to the filing of the respective action, Plaintiffs plead that they "neither knew nor reasonably should have known that the decedent's death was caused or contributed to by exposure to radiation until less than three years before commencement of this action." *See, e.g.*, Case No. 4:14-cv-00671, Doc. No. 1 at 7.

The sole claim in each complaint is a "public liability action" under the PAA, asserting that each Defendant's conduct constituted a "nuclear incident" within the meaning of the PAA, thus exposing each Defendant to liability for the resulting injuries to Plaintiffs. Plaintiffs assert that the substantive rules for their PAA public liability actions must be derived from Missouri state law.

## ARGUMENTS OF THE PARTIES

Defendants do not contest Plaintiffs' assertion that the applicable federal radiation dose limit for members of the general public between 1957 and 1989 was 500 millirem per year, and the applicable dose limit after 1989 was 100 millirem per year. However, Defendants note that there are several Plaintiffs who fail to allege exposure in excess of the applicable 500 millirem per year dose limit. Mallinckrodt identifies 27 of these Plaintiffs in Exhibit 1 to its memorandum in support of its motion to dismiss.[3] In addition to the

---

[3] The Plaintiffs listed in Mallinckrodt's Exhibit 1 are Scott D. McClurg, Walter P. Sieckmann, Sr., and William B. Donaldson in the lead case, No. 4:12-cv-00361; Jeff Drey, Charlena Ishmon, John Shields, and Angela M. Uhles in case no. 4:12-cv-00641; Kathleen Bilger in Case No. 4:13-cv-02163; Trish Ellen O'Laughlin, Kimberly Sayre, Carrie O'Rourke, Theresa Cardosi, and Belynda Frame in Case No. 4:14-cv-00035; Mary Zvorak in Case No. 4:14-cv-00351; Carol Sayre for the death of Mary Beatty, Carol Sayre for the death of William Sayre, Ashley Pedraza for the death of Alfred Brueggeman, and William Kranz for the death of Frank Kranz in Case No. 4:14-cv-00669; Cynthia Fondren for the

Plaintiffs listed in Mallinckrodt's Exhibit 1, the Court has identified two other Plaintiffs who fail to allege exposure in excess of 500 millirem per year.[4] Each of these 29 Plaintiffs either fails to allege exposure in excess of any numerical dose or alleges exposure in excess of 100 millirem, rather than 500 millirem, per year. Both Defendants seek dismissal of these Plaintiffs' claims for failure to plead an essential element of their PAA public liability actions, namely, breach of the applicable federal dose limit.

Additionally, Cotter seeks the dismissal of Plaintiff David Powell's claim in Case No. 4:14-cv-00037. Plaintiff Powell alleges exposure to radiation between 1949 and 1963, whereas Cotter's allegedly unlawful activity did not begin until 1969. (Case No. 4:14-cv-00037, Doc. No. 1 at 7.) Cotter argues that because Powell's alleged exposure predates any activity by Cotter, Powell fails to state a claim against Cotter. (Doc. No. 213 at 12 n.11.)

With respect to the remaining Plaintiffs, each of whom pleads in a single sentence annual exposure in excess of 500 millirem, both Defendants argue that Plaintiffs' allegations are too conclusory to satisfy federal pleading standards. Defendants argue that

---

death of Myron Harmon, Barbara Tocco for the death of Pattie Teutrine, Beverly Manno for the death of Sharron Walkenhorst, and Barbara Tocco for the death of Anthony Tocco in Case No. 4:14-cv-00670; and William Kranz for the death of Dorothy Kranz, James Drey for the death of Sandra Drey, Dana Xolo Chigo for the death of Donna Hicks, Tarae Skurat for the death of Steven Skurat, and Armand Salas for the death of Beverly Breeland-Salas in Case No. 4:14-cv-00671. (Doc. No. 211-1 at 1-3.) Mallinckrodt states in its reply brief that Plaintiff Dana Chigo for the death of Donna Hicks in Case No. 4:14-cv-00671 was inadvertently omitted from Exhibit 1. (Doc. No. 219 at 4 n.3) But as noted above, this Plaintiff was included in Exhibit 1.

[4]  These two Plaintiffs are Jason Roche in Case No. 4:14-cv-00035 and Eric Kluempers in Case No. 4:14-cv-01523.

Plaintiffs' current complaints do not differ in substance from the original complaints, which alleged in conclusory fashion that "[i]nvestigations have determined that contamination levels at the North St. Louis County Sites exceed federal dose limits" (Doc. No. 1 at 23), and which the Court found insufficient (Doc. No. 141 at 5).

Defendants also argue that it is apparent from the face of the complaints that Plaintiffs' claims are barred under the applicable statutes of limitations for wrongful death and personal injury actions. Defendants contend that the Plaintiffs' PAA public liability actions are governed by Missouri's three-year statute of limitation for wrongful death actions, which accrues at the time of death, and Missouri's five-year statute of limitation for personal injury actions, which accrues when the illness is diagnosed and a theory as to its cause is ascertainable. Defendants argue that several Plaintiffs filed their wrongful death claims more than three years after the death of their decedents. As for the personal injury claims, Defendants note that all Plaintiffs fail to plead the dates of their diagnoses. But with respect to some Plaintiffs, Defendants assert that the facts pled in the current complaints regarding Plaintiffs' ages at diagnosis and current ages suggest that more than five years have passed since the time of diagnosis. Defendants also assert that they have learned through discovery that other Plaintiffs were diagnosed more than five years before their claims were filed.

Finally, Defendants argue that Plaintiffs cannot avoid the time bar by arguing that the cause of their injuries was not readily ascertainable at an earlier date because, according to Plaintiffs' own allegations, the activities surrounding the disposal of radioactive

materials at the North St. Louis County Sites have been well publicized for several decades.

Regarding their burden to plead a breach of the federal dose standards, Plaintiffs concede that with respect to Cotter, whose conduct is alleged to have occurred between 1969 and 1973, the applicable federal dose limit is 500 millerem per year. Plaintiffs also concede that if, as this Court has already held, Plaintiffs must plead a breach of the federal dose limits in order to state a PAA public liability action, then the 29 Plaintiffs identified above fail to state a public liability action against Cotter.[5] (Doc. No. 218 at 14 n.4.) Plaintiffs do not suggest that they would be able to cure this pleading deficiency if given leave to amend, but Plaintiffs continue to include the 29 claims against Cotter solely to preserve these claims for appeal. *Id.* Other than these 29 claims, however, Plaintiffs argue that their complaints sufficiently state PAA public liability actions against Cotter because each Plaintiff alleges exposure in excess of 500 millirem and resulting injury.[6]

Plaintiffs make no such concessions with respect to Mallinckrodt. Plaintiffs argue that because Mallinckrodt's activities occurred solely between 1942 and 1957, before any federal safety standards governing radiation existed, Mallinckrodt cannot claim the

---

[5] Plaintiffs concede that the 27 Plaintiffs identified in Mallinckrodt's Exhibit 1 fail to state a public liability action against Cotter because they fail to allege exposure in excess of 500 millirem per year. (Doc. No. 218 at 14 n.4.) For the same reasons, Plaintiffs must concede that the two additional Plaintiffs identified by the Court who fail to allege exposure in excess of 500 millirem per year also fail to state a public liability action against Cotter.

[6] Plaintiffs have not responded to Cotter's additional argument that Plaintiff David Powell in Case No. 4:14-cv-00037 fails to state a claim against Cotter because Powell's alleged exposure to radiation predates any alleged unlawful activity by Cotter.

protection of federal dose limits.   Instead, Plaintiffs argue that their PAA public liability actions against Mallinckrodt should be governed by state law strict liability standards. Under those standards, Plaintiffs assert that each Plaintiff has stated a claim against Mallinckrodt, including the 29 Plaintiffs noted above.

Regarding the timeliness of their claims, Plaintiffs argue that while state law may provide the applicable statute of limitations for their PAA public liability actions, federal common law governs the date those claims accrued.   Plaintiffs argue that under federal law, their claims did not accrue until they knew or reasonably should have known of both the existence and cause of their injuries.   Because it is not apparent from the face of Plaintiffs' complaints that they knew or should have known of both the existence and cause of their injuries at an earlier date, Plaintiffs argue that the statute of limitations issue cannot be resolved on a motion to dismiss.   Finally, Plaintiffs argue that to the extent their claims would be deemed to accrue earlier under state law, such state law would be preempted by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged.   *Iqbal*,

556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).   A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.   *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

As an initial matter, the Court agrees with Cotter that because Plaintiff David Powell in Case No. 4:14-cv-00037 alleges exposure to radiation solely in the years predating any alleged nuclear incident involving Cotter, Powell fails to state a PAA public liability action against Cotter.   *See* 42 U.S.C. § 2014(w) (defining "public liability" for purposes of a public liability action to mean "legal liability *arising out of or resulting from a nuclear incident . . . .*") (emphasis added).   Therefore, the Court will grant Cotter's motion to dismiss as it relates to Plaintiff Powell's claim in Case No. 4:14-cv-00037.

The remainder of Defendants' motions requires the Court to resolve four separate issues:   first, the applicable standard of care governing Plaintiffs' PAA public liability actions, particularly those arising out of releases of radioactive material before the enactment of federal nuclear safety standards; second, the level of specificity with which Plaintiffs must plead a breach of the applicable standard of care; third, the date on which Plaintiffs' claims accrued under the applicable statutes of limitations; and finally, whether the statute of limitations issues in this case may be resolved on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).   The Court will address each issue in turn.

**Standard of Care**

As this Court held in its last order dismissing Plaintiffs' original complaints, every circuit court to consider the issue has concluded that federal nuclear safety regulations define the standard of care in a PAA public liability action. *See* Doc. No. 141 at 14. This conclusion is driven by the legislative history of the PAA and the related federal regulatory scheme governing nuclear safety standards.

Specifically, when Congress amended the PAA in 1988 to create a federal "public liability action" for injuries arising out of or resulting from any "nuclear incident,"[7] it created an exclusive, retroactive federal cause of action. *See* 42 U.S.C. §§ 2014(hh), 2014(w); Pub. L. No. 100-408 § 20(b)(1), 102 Stat. 1084 ("The amendments [governing judicial review of claims arising out of a nuclear incident] shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act."); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir. 1991) ("*TMI II*") ("A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all*.") (emphasis in original); *O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA, as amended, "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

---

[7]    "Nuclear incident" is defined broadly as "any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."   42 U.S.C. § 2014(q).

Likewise, when Congress provided that "the substantive rules for decision in [a public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section," 42 U.S.C. § 2014(hh), it intended "that state law would operate in the context of a complex federal scheme which would mold and shape any cause of action grounded in state law." *O'Conner*, 13 F. 3d at 1100.

This complex federal scheme included "pervasive federal regulation" that "occupied the entire field of nuclear safety concerns." *TMI II*, 940 F.2d at 858 (citations omitted). Therefore, although state law governs some elements of a PAA public liability action, such as causation and damages, "states are preempted from imposing a non-federal duty [of care]" in a public liability action "because any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law." *TMI II*, 940 F.2d at 859; *see also O'Conner*, 13 F.3d at 1105 ("[W]e believe that the federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action [because] . . . the field of nuclear safety has been occupied by federal regulation; there is no room for state law.") (citation omitted); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) ("[F]ederal safety regulations conclusively establish the duty of care owed in a public liability action.").

As to which federal regulations apply, particularly where, as here, there is a gap of time and intervening regulatory change between a defendant's release of radioactive material and a plaintiff's exposure to such material, most courts have concluded that the federal dose limits in effect at the time of release govern. *See, e.g.*, *Finestone v. Fla.*

13

*Power and Light Co.*, 272 F. App'x 761, 764-65 (11th Cir. 2008) (affirming that standard of care "is set forth by the Radiation Dose Limits for Individual Members of the Public outlined in 10 C.F.R. § 20.1301 applicable for the time of the releases in question," notwithstanding intervening regulatory change between date of release and later date of plaintiffs' exposure) (citation omitted); *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554 DT (RCx), 2005 WL 6035255, at *40 (C.D. Cal. Aug. 18, 2005) ("Plaintiffs must prove exposure to radiation in excess of the permissible radiation dose standards in effect at the time of the alleged incident.   Plaintiffs must therefore prove that Defendants breached the applicable federal permissible dose limits in effect at the time of the July 1959 Sodium Reactor Experiment incident."); *Carey v. Kerr-McGee Chem. Co.*, 60 F. Supp. 2d 800, 809 (N.D. Ill. 1999) ("[T]his court concludes that the standard of care is set forth by the Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question."); *Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 218 (D. Me. 1996) ("[T]his Court will apply the regulations in effect at the time of the incident giving rise to the suit."); *see also In re TMI*, 67 F.3d 1103, 1109 n.10 (3d Cir. 1995) ("*TMI I*") ("In this case, the relevant federal regulations were those in place at the time of the TMI accident in 1979.").

The first federal regulations creating nuclear safety standards were enacted in 1957 by the Atomic Energy Commission ("AEC").   *See* 22 Fed. Reg. 548, 548 (Jan. 29, 1957) (to be codified at 10 C.F.R. pt. 20) (issuing regulations "to establish standards for the protection of [nuclear facility] licensees, their employees and the general public against radiation hazards[.]").   In 1960, the AEC substantially revised these regulations, including

by promulgating 10 C.F.R. §§ 20.105 and 20.106, which "set[] 0.5 rem [500 millirem] as the maximum yearly radiation exposure allowed for the general public." *TMI I*, 67 F. 3d at 1111; *see also* 25 Fed. Reg. 8595, 8598 (Sept. 7, 1960). These regulations were in place until 1991, when the AEC's successor, the Nuclear Regulatory Commission ("NRC"), reduced the annual permissible dose limit for individual members of the general public to 0.1 rem (100 millirem). *See TMI I*, 67 F. 3d at 1111 n.18; 56 Fed. Reg. 23360, 23398 (May 21, 1991).

Therefore, with respect to Cotter, whose releases are alleged to have occurred between 1969 and 1973, when the parties agree the applicable federal dose limit was 500 millirem per year, an essential element of each Plaintiff's PAA public liability action is a breach of the 500 millirem per year dose limit. Because Plaintiffs concede that they do not and cannot plead this element with respect to the 29 Plaintiffs noted above, these Plaintiffs' claims against Cotter will be dismissed.

But the question remains: What standard of care applies to Mallinckrodt's alleged releases, which occurred before any federal nuclear safety standards were enacted?

Although few cases have dealt with nuclear incidents dating back as far as Mallinckrodt's activities in this case, the Ninth Circuit's decision in *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986 (9th Cir. 2007), is directly on point. Like this case, *Hanford* involved PAA public liability actions arising out of incidents dating back to the development of the atomic bomb during World War II. *Hanford*, 534 F.3d at 995. The parties in *Hanford* eventually agreed to a bellwether trial of six plaintiffs who suffered various thyroid diseases they claimed were caused by radiation released from the Hanford

15

nuclear facility in the 1940's. *Id.* at 998. The trial proceeded on a strict liability theory, applying a standard of care set by Washington tort law, and a jury ultimately found in favor of two of the plaintiffs. *Id.* at 997-98.

On appeal, the defendants attacked the jury verdict on a variety of grounds, including that the "[p]laintiffs may not proceed under a strict liability theory, because the . . . emissions were within federally-authorized levels." *Id.* at 999. The defendants argued that because their emissions complied with the tolerance doses recommended by military scientists working on the Hanford project, they were not subject to liability under the PAA.

The Ninth Circuit rejected this argument. The court recognized that "[e]very federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they breach federally-imposed dose limits." *Id.* at 1003. The court noted that this rule was based on the rationale that applying a state tort law standard of care "would put juries in charge of deciding the permissible levels of radiation exposure and, more generally, the adequacy of safety procedures at nuclear plants—issues that have explicitly been reserved to the federal government." *Id.* (citing *TMI I*, 67 F.3d at 1115). Nevertheless, the court refused to overturn the jury verdict because "no federal standards governing emission levels existed at the time of the [defendants'] emissions." *Id.* The court held that the recommended tolerance doses put forth by the defendants did not equate to federally authorized emissions levels and therefore could not protect defendants from liability under state law standards. *Id.* at 1003-04.

16

The court acknowledged that the "it would not have been possible for an agency to establish emission levels in the early 1940s, because the Atomic Energy Act was not enacted until 1954 and the Nuclear Regulatory Commission was created in 1974." *Id.* at 1004. But the court held that this history only undermined the defendants' position "because it highlights the absence of any federal machinery to promulgate legal standards on which [the] [d]efendants could have reasonably relied to insulate them from liability." *Id.* Therefore, the court found that state law applied, and under Washington law, the defendants were subject to strict liability. *Id.* at 1004-07.

The Court agrees with the reasoning of *Hanford.* Although it is well established that a federally defined standard of care must replace any state standard in a PAA public liability action, the principle holds true only to the extent an applicable federal standard of care exists. At the time of Mallinckrodt's pre-1957 releases, Congress had not yet enacted federal regulations defining any particular federal dose limits. Indeed, the 500 millirem per year dose limit to which Mallinckrodt seeks to hold Plaintiffs was not enacted until 1960. Because no federal standard of care existed at the time of Mallinckrodt's releases, under the plain language of the PAA, the standard of care must be derived from Missouri tort law. 42 U.S.C. § 2014(hh) ("[T]he substantive rules for decision in [a public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.").

The Court also agrees with Plaintiffs, and Mallinckrodt does not dispute, that under Missouri tort law, injuries arising from Mallinckrodt's handling of radioactive materials would be subject to strict liability. *See Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 870

(Mo. Ct. App. 1985) ("Strict liability is an appropriate principle for activities generating radioactive emissions.").

As such, Mallinckrodt may be held strictly liable under the PAA for its pre-1957 releases, and by the same token, Plaintiffs may state a PAA public liability action against Mallinckrodt without pleading a breach of any specific dose limit. Therefore, the Court will deny Mallinckrodt's motions to dismiss as they relate to Plaintiffs' dosage allegations.

**Specificity of Remaining Plaintiffs' Dosage Allegations Against Cotter**

With respect to Plaintiffs' claims against Cotter, for which the Court has found Plaintiffs must plead a breach of the 500 millirem per year federal dose limit, the Court now turns to the second issue: the level of specificity required for the remaining Plaintiffs' dosage allegations.

Contrary to Cotter's assertions, the current complaints do not merely restate the conclusory allegations of the original complaints, which the Court previously found deficient. In the original complaints that were dismissed by the Court, the Plaintiffs alleged only that "[i]nvestigations have determined that contamination levels at the North St. Louis County Sites exceed federal dose limits." *See, e.g.*, Doc. No. 1 at 23. Finding this allegation insufficient to determine whether Defendants actually breached the applicable federal dose limits, rather than merely whether excess contamination existed at the North St. Louis County Sites, the Court dismissed the original complaints with leave to amend.

The most recent complaints attempt to cure this deficiency by pleading with respect to each Plaintiff, except for the 29 Plaintiffs discussed above, that, as a result of

18

Defendants' conduct, the Plaintiff's "average annual exposure to radiation during the time [he or she] lived in close proximity to the [North St. Louis County Sites] was in excess of 500 millirem." *See, e.g.*, Doc. No. 201 at 6-14.

Cotter contends that this statement is merely conclusory and insists that Plaintiffs must plead additional factual detail, such as each Plaintiff's actual dosage, the specific chemicals or substances at issue, the pathway of the exposure, and more specific allegations of duration and location of exposure beyond Plaintiffs' allegations regarding the years in which each Plaintiff lived, worked, or recreated near the North St. Louis County Sites. Cotter asserts that Plaintiffs should have this information readily available because, according to Plaintiffs' own requests for extensions of time to amend their complaints, Plaintiffs have been consulting with experts for more than a year since the original complaints were filed to collect this very information.

However, none of the cases cited by Cotter or found by the Court require the level of detail that Cotter seeks at the pleading stage. *Cf. Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 768 (E.D. Tenn. 2012) (dismissing PAA public liability action with prejudice only after "Plaintiffs concede[d] that they do not plead, and cannot prove" a breach of the relevant federal dose limits).

Bearing in mind that under Federal Rule of Civil Procedure 11(b)(3), Plaintiffs and Plaintiffs' counsel have certified to the Court that their factual contentions have evidentiary support, the Court finds that the remaining Plaintiffs' factual allegations that Cotter's conduct caused them to be exposed to contamination in excess of federal dose limits are sufficient to state a plausible PAA public liability action against Cotter.

Therefore, the Court will deny Cotter's motion to dismiss as it relates to the dosage allegations of all Plaintiffs other than the 29 Plaintiffs listed above.

## Statute of Limitations

Regarding the third issue in this case, the relevant statute of limitations and accrual dates for Plaintiffs' claims against both Defendants, Defendants correctly assert that Missouri law governs the statute of limitations for Plaintiffs' PAA public liability actions. *See, e.g.*, *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 542 (2d Cir. 1999) (holding that because the PAA does not provide a statute of limitations for actions arising out of nuclear incidents other than extraordinary nuclear occurrences, "a court must apply the limitations period of the state-law cause of action most analogous to the federal claim.") (citation omitted); *Lujan v. Regents of Univ. of Cal.*, 69 F.3d 1511, 1517 (10th Cir. 1995) (same).

Plaintiffs concede that Missouri's three-year statute of limitations for wrongful death actions under Mo. Rev. Stat. § 537.100 and Missouri's five-year statute of limitations for personal injury actions under Mo. Rev. Stat. § 516.120(4) apply to their PAA public liability actions. However, Plaintiffs assert that federal law must govern the accrual date of those actions, and under federal law, a claim accrues when the plaintiff knows or reasonably should know of both the existence and cause of the injury.

"Ordinarily, when federal law borrows a state statute of limitations, it also borrows state law governing when the statute begins to run and when it is tolled." *Lujan*, 69 F.3d at 1516 n.5. However, the Court need not resolve which law governs the accrual date of Plaintiffs' claims in this case because under Missouri law, too, Plaintiffs' claims did not accrue until they knew or reasonably should have known of the cause of their injuries, or in

the case of wrongful death, the wrongful nature of the deaths. *See Ray v. Upjohn Co.*, 851 S.W.2d 646, 650 (Mo. Ct. App. 1993) (citing with approval Missouri authority determining that the five-year statute of limitations for personal injury claim, Mo. Rev. Stat. § 516.120, "did not start until the plaintiff was aware of his condition *and its cause*") (emphasis added); *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. 1984) (holding that a personal injury action accrued under Missouri law when "the character of the condition (asbestosis) *and its cause* (breathing asbestos dust) first 'came together' for the plaintiff") (emphasis added); *Boland v. St. Luke's Health Sys., Inc.*, Nos. WD 75364, WD 75366, WD 75367, WD 75484, WD 75485, 2013 WL 6170598, at *7 (Mo. Ct. App. Nov. 26, 2013) ("A wrongful death cause of action does not necessarily accrue at the time of death; rather, it accrues at the time that a diligent plaintiff has knowledge of facts sufficient to put him on notice of an invasion of his legal rights.") (citation omitted).

Having found that Plaintiffs' claims accrued when they first knew or reasonably should have known of both the existence and cause of their injuries, or of the wrongful nature of their decedents' deaths, the Court now turns to the final issue: whether Defendants' statute of limitations challenges may be resolved on a motion to dismiss.

"[W]hen it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a 12(b)(6) motion to dismiss." *Wycoff v. Menke*, 773 F.2d 983, 984-85 (8th Cir. 1985) (citation omitted). In this case, it is not clear from the face of Plaintiffs' complaints when they first knew or reasonably should have known of either the cause of their injuries or the wrongful nature of their decedents' deaths. Although Defendants argue that Plaintiffs should have known of

the cause of their injuries much earlier because, according to Plaintiffs' own allegations, the existence of radioactive materials at the North St. Louis County Sites has been well publicized for decades, the Court finds that this issue requires further development of the record. *See Hildebrandt v. Allied Corp.*, 839 F.2d 396, 399-400 (8th Cir. 1987) (reversing summary judgment on statute of limitations grounds for personal injury claims based on chemical exposure, and finding question of fact existed regarding when plaintiffs knew or should have known of the causal relationship between their injuries and the defendants' alleged misconduct). The Court will therefore deny both Defendants' motions as they relate to the timeliness of Plaintiffs' claims, without reaching Plaintiffs' alternative argument regarding CERCLA.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Cotter's motions for joinder are **GRANTED**. (Doc. Nos. 222 & 253.)

**IT IS FURTHER ORDERED** that Defendant Mallinckrodt's motions to dismiss are **DENIED**. (Doc. Nos. 210, 221 & 252.)

**IT IS FURTHER ORDERED** that Defendant Cotter's motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. No. 212.) The motion is **GRANTED** with respect to the following Plaintiffs' public liability actions against Cotter:

| Plaintiff | Case No. |
|---|---|
| David Powell | 4:14-cv-00037 |
| Scott D. McClurg | 4:12-cv-00361 |
| Walter P. Sieckmann, Sr. | 4:12-cv-00361 |

| | |
|---|---|
| William B. Donaldson | 4:12-cv-00361 |
| Jeff Drey | 4:12-cv-00641 |
| Charlena Ishmon | 4:12-cv-00641 |
| John Shields | 4:12-cv-00641 |
| Angela M. Uhles | 4:12-cv-00641 |
| Kathleen Bilger | 4:13-cv-02163 |
| Trish Ellen O'Laughlin | 4:14-cv-00035 |
| Kimberly Sayre | 4:14-cv-00035 |
| Carrie O'Rourke | 4:14-cv-00035 |
| Theresa Cardosi | 4:14-cv-00035 |
| Belynda Frame | 4:14-cv-00035 |
| Jason Roche | 4:14-cv-00035 |
| Mary Zvorak | 4:14-cv-00351 |
| Carol Sayre for the death of Mary Beatty | 4:14-cv-00669 |
| Carol Sayre for the death of William Sayre | 4:14-cv-00669 |
| Ashley Pedraza for the death of Alfred Brueggeman | 4:14-cv-00669 |
| William Kranz for the death of Frank Kranz | 4:14-cv-00669 |
| Cynthia Fondren for the death of Myron Harmon | 4:14-cv-00670 |
| Barbara Tocco for the death of Pattie Teutrine | 4:14-cv-00670 |
| Beverly Manno for the death of Sharron Walkenhorst | 4:14-cv-00670 |
| Barbara Tocco for the death of Anthony Tocco | 4:14-cv-00670 |
| William Kranz for the death of Dorothy Kranz | 4:14-cv-00671 |
| James Drey for the death of Sandra Drey | 4:14-cv-00671 |
| Dana Xolo Chigo for the death of Donna Hicks | 4:14-cv-00671 |
| Tarae Skurat for the death of Steven Skurat | 4:14-cv-00671 |
| Armand Salas for the death of Beverly Breeland-Salas | 4:14-cv-00671 |
| Eric Kluempers | 4:14-cv-01523 |

These Plaintiffs' claims against Cotter are **DISMISSED**.   In all other respects, the motion

is **DENIED.**

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2015.