IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT D. MCCLURG, et al.,<br><br>                Plaintiffs,<br><br>vs.<br><br>MALLINCKRODT, INC., et al.,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)  Pertaining to Cases Consolidated for<br>)  Discovery and Pretrial Proceedings under<br>)  Lead Case No.  4:12CV00361 AGF<br>)<br>)<br>)<br>) |

       This order relates to the parties' production of documents and supplements all other discovery rules and orders in this litigation.  It streamlines production of documents and Electronically Stored Information ("ESI") to promote a "just, speedy, and inexpensive determination" of this action, as required by the Federal Rules of Civil Procedure.

       A.  Format of Production

       1.  The parties shall produce electronic documents in a single-paged Tagged Image File format ("TIFF") with extracted text with an accompanying load/unitization file to indicate the location and unitization of the TIFF files. Documents that are maintained in paper form may be produced in an electronic image form in the manner provided herein, or produced in a paper form or made available for initial examination as outlined in Paragraph A.8.

       2.  Each page of a produced document shall have a legible, unique page identifier ("Bates Number"), and confidentiality legend (where applicable), on the face of the image at a location that does not interfere with the information from the source documents.

3. Load/unitization files will indicate where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  These files will also contain the data relevant to the individual documents, such as metadata, coded data, and OCR or extracted text.

4. The parties will provide the following metadata fields where available:

   a) Beginning bates number
   b) Ending bates number
   c) Beginning Bates number of attachment range (first page of parent document)
   d) Ending Bates number of attachment range (last page of last attachment)
   e) Attachment count (email)
   f) Attachment name (email)
   g) Custodian/Source
   h) Duplicate Custodian(s)
   i) Author/From
   j) Document type
   k) Subject
   l) Recipient
   m) CC
   n) BCC
   o) Sent date
   p) Received date
   q) Create date
   r) Last modified date
   s) DocExt
   t) File name

    u) File path

    v) Native file link

    w) Text path

    x) Importance Ranking (email)

    y) File size

    z) Page count

    aa) Redacted

The custodian/source metadata field, if applicable, shall be provided for all documents produced. There is no requirement that a Producing Party objectively code paper documents or ESI to provide metadata fields not otherwise available.

    5. In scanning paper documents, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized). Parent-child relationships (the association between an attachment and its parent document) shall be preserved. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

    6. Excel spreadsheets, PowerPoint presentations, audio files, and video files will be produced natively with a corresponding place holder TIFF image for these records bearing the legend "This document produced in native file format only." Other document formats that present imaging problems shall be promptly identified, and the parties shall meet and confer to attempt to resolve the problems.

    7. Pursuant to Federal Rule of Evidence 502(d) and the governing Protective Order in this case, the inadvertent production of a privileged or work product protected document is not a waiver in the pending case or in any other federal or state proceeding.

8. A Producing Party reserves the right to make certain sets of documents available for initial examination by the Requesting Party.  The Requesting Party will select those documents it wishes to have produced.  The Producing Party reserves the right to review and screen for privilege or protection any document that is selected for production.  A Producing Party may withhold from that production any privileged document and identify the privileged document on a privilege log as outlined in Section G.  Additionally, a legend may be placed on those documents protected under any Protective Order in place for this litigation.  The parties agree that a Producing Party is not waiving, and a Requesting Party will not argue that a Producing Party has waived, any claims of attorney-client privilege, attorney work product protection, or any other privilege or protection, including protections enumerated in any Protective Order, by making documents available for initial examination.  As provided in Federal Rule of Evidence 502(d), such an initial examination is also not a waiver in any other federal or state proceeding.

9. The parties are not required to produce exact duplicates of electronic documents stored in different locations.  The parties may globally de-duplicate identical ESI, which will be determined as follows:

> (i) Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.  File contents only will be used for MD5 Hash value calculation and will not include operating system metadata (filename, file dates) values.
>
> (ii) Messaging files will be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments.  The MD5 Hash value will be calculated using a consistent set of common email metadata fields, for example: : To; From; CC; BCC; Date Sent; Subject; Body; and, attachment

4

6961194 v1

count.  Messaging materials will be de-duplicated at a family level, including message and attachment(s).

If parties de-duplicate identical ESI, they shall provide custodian associations in a semi-colon delimited overlay file that includes duplicate custodian name information for the duplicate custodians.  The overlay files shall be produced after every production and shall be continually updated to account for rolling productions.  The parties shall produce documents on CD, DVD, hard drives, or FTP transfer, provided the method of production works for the opposing side to extract the necessary information.

10. For each document containing searchable text, a single text file shall be provided along with the image files and metadata.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy document.  In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

11. When documents produced in accordance with this Order are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents as described in Paragraph A.1 shall be the copy used.  Extracted text shall not be used in any proceeding as a substitute for the image of any document.

12. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.  It will be presumed, although either party may seek to rebut that presumption, that costs for production from a backup or archive, to the extent it is deemed necessary, will be paid by the party making the request.

6961194 v1

13. Absent a showing of good cause, non-transcribed voicemails, and PDAs are deemed not reasonably accessible and need not be collected and preserved. This section is not applicable to smart phones, i.e. blackberries, iphones, androids, etc.

14. When processing ESI, CST shall be selected as the time zone.

15. Objects embedded in Microsoft Word and .RTF files will be extracted as separate documents and, if responsive and non-privileged, will be produced as attachments to the document.

16. Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

17. Any documents that are replaced in later productions shall be clearly designated as such, by appending an " R" to the production prefix.  When a party produces a replacement production indicated by "R," the receiving party must discard or return to the producing party all copies, including working copies, of the original, replaced image.

18. Any native files that are produced shall be produced with the source file path provided, as well as all extracted text and applicable metadata fields set forth in this order.

19. Documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

20. Upon determination of the existence of relevant structured databases by the means available to the parties, the parties agree to meet and confer regarding the production of relevant structured data sources.  If no agreement can be reached the parties will consult with the Court on the manner of production.

6961194 v1

    B.  Production of Custodial Files

    1.  Within 14 days of service of Requests to Produce pursuant to Federal Rule of Civil Procedure 34 ("RFPs"), the parties shall meet and confer to discuss whether custodians with relevant information exist, keeping in view the pleaded claims and defenses in this litigation.  Should such custodians exist, the parties will further meet and confer regarding production of custodial files and the parties shall begin producing responsive, non-privileged, reasonably accessible documents, on a rolling basis, from the custodial files of these custodians within 45 days of service of RFPs.  Upon the substantial completion of the production of these custodial files, the parties shall meet and confer concerning the production of additional custodial files.  This paragraph does not relieve parties from otherwise responding to production requests.

    2.  The parties will use search terms, as agreed by the parties, to cull collected electronic data from 1940 to the date of collection.  Defendants will notify plaintiffs when production of documents collected from specific custodians is substantially complete pursuant to defendants' discovery responses. The parties will meet and confer regarding the production of additional custodial files, if any.

    C. Production of Non-Custodial Files

    1.  Defendants shall begin producing responsive, non-privileged, reasonably accessible documents identified in departmental or non-custodial areas, on a rolling basis, within 45 days of service of RFPs.  The parties will meet and confer regarding the status of production of documents from departmental or non-custodial areas.

    D.  Technical Specifications

    1.  The following technical specifications are subject to selection of document servers and/or vendors, understanding that differing options have minor differences on technical specifications, such as file types or extensions.  The

parties reserve the right to meet and confer regarding technical specifications and to alter this section.

      2. All TIFF-formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size. If a color image is produced in black and white, the receiving party may request the producing party to produce the original, color image. After receiving such a request for color production, the parties will meet and confer on a reasonable and cost-effective means of providing the requested documents.

      3. There will be two Load/Unitization files accompanying all productions. One will be the Image load file and the other will be the Metadata load file.

      4. Specifications for the image load files will be the following:

          (i) Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

          (ii) Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

          (iii) The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt, .csv, .dat, or .dii[1] extension (e.g., ABC00l.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.). If a .dii file is

---

[1] Subject to server and/or vendor selection.

6961194 v1

produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.

(iv)  The load file shall contain one row per TIFF image.

(v)  Every image in the delivery volume shall be contained in the image load file.

(vi)  The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

5. Specifications for the metadata load files will be the following:

(i)  The metadata load file shall use the following delimiters:

- Column Delimiter: Pipe - | (ASCII 124)
- Text Qualifier: Caret - ^ (ASCII 94)
- New line: Registered sign - ® (ASCII 174)

(ii)  Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

(iii)  The first record shall contain the field names in the order of the data set forth in the Metadata.

(iv)  All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format, with the understanding that full date and time information is not available for all documents.

(v)  A carriage-return line-feed shall be used to indicate the start of the next record.

(vi)  Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

9

      (vii)  The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC00l.dat).

      (viii)  The volume names shall be consecutive for each produced source. (i.e., ABC00l, ABC002, et. seq.).

  E.  <u>Costs</u>

The parties reserve the right to seek cost shifting as appropriate.  Subject to a request for cost shifting, each party will bear the costs to process and review its own documents and readily accessible ESI.  To the extent any party requests discovery of data that a responding party believes is not reasonably accessible because of undue burden or cost, the party shall provide information on costs to process or review, then the parties shall confer in an effort to avoid the need to seek Court assistance pursuant to Fed. R. Civ. P. 26(b)(2)(B).

  F.  <u>Protective Order</u>

All documents that have been or will be produced by the parties will be subject to the terms of the Protective Order entered in this litigation.

  G.  <u>Rule 26(f)(3)(D):  Privileged Documents and Attorney Work Product</u>

Producing Parties will produce privilege logs in searchable PDF format within 60 days after the production from which the privileged documents were withheld.  When there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire email chain, and need not log each email contained in the chain separately.  No party is required to include in its privilege logs (1) privileged communications with outside counsel whose representation is relevant to the subject matter of this lawsuit or (2) redactions from produced documents, provided the reason for the redaction appears on the redaction label (e.g. Privileged, Work Product, Personal Information). Redacted documents will be produced in TIFF format with corresponding searchable OCR

text and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure. The parties may modify the deadlines for production of privilege logs by agreement.

H. Expert Disclosures and Reports

The parties agree that communications with counsel that the expert is not relying upon and all draft reports shall remain protected work product at all times and shall not be exchanged or disclosed. In the event of any inadvertent production of such documents, the receiving party shall destroy or return the inadvertently disclosed materials.

I. Applicability

This order governs all pending or future Requests for Production, Requests for Admission, Interrogatories, and deposition notices. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this protocol.

IT IS SO ORDERED.

DATED: May 13, 2015

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE