UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. MCCLURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12-CV-00361-AGF |
| | ) | |
| MALLINCKRODT, INC., et al., | ) | Lead Case |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

These consolidated cases are before the Court on the motion (Doc. No. 428) of Defendants Mallinckrodt, LLC, and Cotter Corporation, for a protective order to fairly allocate the approximately $482,000 in costs that Defendants have incurred in collecting the medical and other records of the hundreds of Plaintiffs who have filed complaints alleging injuries due to radiation exposure.[1] Plaintiffs have served document requests seeking only the records that Defendants have collected of the 16 Plaintiffs who have been selected for the first round of full discovery in this matter. Defendants argue that before Plaintiffs are allowed to access these records, they should have to pay one-third[2] of the total costs that Defendants have incurred to collect records of all Plaintiffs that have filed suit to date. Plaintiffs have offered to pay one-third of the costs that Defendants incurred in collecting the specific records requested for the 16 Plaintiffs, less a credit for the costs that Plaintiffs incurred in collecting their own records and producing them to Defendants.

---

[1] Defendants assert that this figure is an approximation of the expenses incurred as of June 2016, and that they will provide an exact accounting of costs at a later date.

[2] Defendants assert that Mallinckrodt, Cotter, and Plaintiffs should split the costs evenly.

For the reasons set forth below, the Court will grant Defendants' motion in part.

## BACKGROUND

The parties' dispute arises after protracted proceedings to determine the most efficient method to manage these consolidated radiation exposure cases. As early as August 2012, a few months after the initial complaint was filed in this Lead Case, Defendants requested that each Plaintiff provide a list of known health care providers and a signed authorization for the release of medical records to Defendants. (Doc. No. 123-1.) Defendants also requested that the Court enter a case management order patterned after *Lore v. Lone Pine Corp.*, No. L 33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div., Nov. 18, 1986) ("*Lone Pine*"), which Plaintiffs opposed. As more cases were filed and consolidated, and in light of Plaintiffs' attorneys' repeated statements that they possessed preliminary expert reports confirming the bases for Plaintiffs' claims, the Court resolved this dispute by foregoing a *Lone Pine* case management order in favor of a requirement that, shortly after filing his or her complaint, each Plaintiff disclose to Defendants a completed questionnaire, together with medical records in the Plaintiff's possession, a list of the Plaintiff's medical providers, a signed authorization for the release of medical and employment records, and the preliminary expert report referenced by Plaintiffs' counsel.

Because Plaintiffs did not timely and fully produce all of their records, Defendants contracted with a third-party vendor, the Marker Group, to collect records directly from Plaintiffs' health care providers and employers. Defendants state that they have, through the Marker Group, collected records of the hundreds of Plaintiffs that have filed suit in order to learn more about Plaintiffs' claims before a representative sample of Plaintiffs was

selected for full discovery and, eventually, bellwether trials (Plaintiffs selected for full discovery referred to herein as "Bellwether Plaintiffs").[3] Both Defendants are able to access the records electronically, through a secure portal set up by the Marker Group.

After several discussions regarding a possible cut-off date for the consolidation of newly filed cases, the Court, following a regularly scheduled status conference on February 26, 2016, held that while cases filed thereafter might still be consolidated for pretrial purposes, only those Plaintiffs who filed their cases on or before March 15, 2016, would be eligible to be Bellwether Plaintiffs. (Doc. No. 340.) After several unsuccessful attempts by the parties to reach agreement on a method to select Bellwether Plaintiffs, on or about May 26, 2016, the parties agreed to divide the eligible Bellwether Plaintiffs into four sub-groups, based on their alleged dates and locations of exposure. On July 1, 2016, the Court randomly selected four Bellwether Plaintiffs from each sub-group for an initial round of full discovery (the "Initial Trial Pool"), and five more Bellwether Plaintiffs from each sub-group for a second round of full discovery (the "Second Trial Pool").

On or about July 20, 2016, Plaintiffs served document requests seeking "all documents and records" that Defendants had collected regarding each of the 16 Bellwether Plaintiffs in the Initial Trial Pool. In their motion before the Court, Defendants assert that it would be unfair to "allow Plaintiffs to take full advantage of Defendants'

---

[3] The Court does not agree with Defendants' suggestions throughout their briefs that the Court directed or instructed Defendants as to the timing and scope of their record collection. Although the Court has consistently encouraged the parties to proceed as intelligently and efficiently as possible, it has largely deferred to the parties' own views regarding how best to do so. *See, e.g.,* Doc. No. 326 at 29. The Court does acknowledge, however, that it continued to inquire of the parties regarding their progress in collecting medical records.

record-collection efforts over the past years, during which Defendants did not have the benefit of knowing which individuals would be selected for Bellwether trials." (Doc. No. 428 at 1.) Defendants contend that if Plaintiffs wish to access records collected by Defendants regarding any Plaintiff, Plaintiffs should be required to pay one-third of the total costs Defendants have incurred to collect records of all Plaintiffs that have filed suit to date, and that Plaintiffs should be responsible for one-third of the record collection costs going forward. According to Defendants, early record collection was necessary because Plaintiffs were unable to timely fulfill their own obligations to gather and produce their medical and other records. Defendants further assert that early record collection helped move the litigation forward, particularly in terms of advancing the process to select Bellwether Plaintiffs and ensuring no time was wasted waiting for records once Bellwether Plaintiffs were selected. Finally, Defendants assert that they have consistently taken the position that the parties should share a single set of records, with each party paying one-third of the costs, but that Plaintiffs rejected that approach and should not now be able to access the records of their choosing at a fraction of the overall costs.

Plaintiffs respond that they had no input into the scope of Defendants' record collection efforts, which Plaintiffs assert included collection from potentially unnecessary health care providers,[4] and that Plaintiffs should not have to pay for records they do not want. Plaintiffs cite a few multidistrict pharmaceutical liability cases in which the district court set up a medical records protocol by which the defendants collected outside medical

---

[4] For example, Plaintiffs assert that Defendants collected records of treatment unrelated to the disease at issue, such as optometry records of a Plaintiff alleging breast cancer due to radiation exposure.

records using a third-party vendor, the plaintiffs were permitted to access the records to obtain the copies they wanted, and the plaintiffs were required to pay some portion of the costs incurred to collect and produce only those records. In at least one of these cases, the plaintiffs were also given a credit for the out-of-pocket costs they incurred to collect their own records and produce them to the defendants.

Plaintiffs assert that they, too, wish to access the Marker Group's secure portal free of charge, in order to decide which records they want. Plaintiffs maintain that, after identifying the records they want, they are willing to pay one-third of the costs Defendants incurred in obtaining those records only, and any costs that may be incurred to copy or produce those records. Plaintiffs are also concerned about paying duplicate costs, in light of the fact that they have collected and produced some of their own records to Defendants, without any contribution from Defendants for their costs. Thus, Plaintiffs seek a credit for the out-of-pocket costs they have incurred to collect and produce their own records.

In reply, Defendants distinguish the multidistrict litigation cited by Plaintiffs as being in a different procedural posture at the time the medical records protocol was established, because, for example, the bellwether plaintiffs had already been selected by that time. By contrast, Defendants argue that in this case, early record collection took place in order to advance the process to select Bellwether Plaintiffs and to immediately begin full discovery (without having to wait for records) after such selection, to the benefit of all.

Defendants state that they agree "in principle" to providing Plaintiffs with a credit for records Plaintiffs have already collected and produced to Defendants. However,

5

Defendants argue that the credit should be limited to records produced in a timely fashion. Specifically, Defendants note that on the evening of November 15, 2016, just one or two days before the scheduled depositions of three Bellwether Plaintiffs, Plaintiffs produced over one thousand pages of records regarding these Bellwether Plaintiffs. Defendants assert that they had little or no time to review the records before the depositions, and that Plaintiffs should not be entitled to a credit for the costs to produce such records, which Defendants assert should have been collected and produced by Plaintiffs months ago.

## **DISCUSSION**

Federal Rule of Civil Procedure 26(c)(1)(B) was amended in December 2015 to expressly recognize that a court may, "for good cause" and to protect a party from "undue burden or expense," issue an order allocating expenses for discovery. Fed. R. Civ. P. 26(c)(1)(B). The Committee Note to the amendment explained that courts were already exercising the authority to allocate expenses, and the amendment provided "an express recognition" of such authority but did "not imply that cost-shifting should become a common practice." *Id.* advisory committee's note to 2015 amendment. Costs for producing documents are generally shifted only when an "undue burden or expense" is imposed on the responding party, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 488 (D.S.D. 2012) (citations omitted).

The Court finds, and the parties generally agree, that good cause exists to order some amount of cost-sharing before Plaintiffs may obtain the records collected by

6

Defendants here. Plaintiffs would ordinarily have been, and pursuant to the Court's order were, responsible for gathering and producing their own records. But while Plaintiffs appear to have produced some records as new complaints were filed, they did not do so in a complete and timely manner. Indeed, Plaintiffs apparently produced records for a few of the Bellwether Plaintiffs just one or two days before their scheduled depositions. And at the regularly held status conferences in this case, it was Defendants, rather than Plaintiffs, who consistently advised the Court regarding the status of record collection. Further, Plaintiffs seek access to the portal establish and maintained at Defendants' expense to determine which records to request. Because Plaintiffs have not fulfilled their responsibilities with respect to collection and production of their records as fully and promptly as they should have in order to permit this case to move forward on the schedule anticipated by the Court and the parties, and because Plaintiffs are now requesting these records from Defendants, and to avail themselves of the advantage of the portal, some allocation of cost is necessary.

As to what constitutes a fair allocation of costs, the Court is not convinced that the record collection protocol used in the multidistrict litigation cited by Plaintiffs is necessarily appropriate here, given the differences between those cases and this matter with respect to the stage of the proceedings, the procedural history, and any agreements reached among the parties. It is unfortunate that the parties in this matter could not agree to a reasonable scope of record collection and allocation of costs, and that they did not seek the Court's intervention in this respect at an earlier stage. Had they done so, the parties

and the Court could have implemented an appropriate record collection protocol at the outset.

At this stage in the litigation, it would be unfair to allow Plaintiffs to gain the benefit of Defendants' early record collection and creation of the portal, which helped move the case forward, without contributing a fair share of the overall costs of such collection. Because this dispute was not brought to the Court's attention prior to Defendants incurring these costs and because the scope of Defendants' record collection may have been broader than Plaintiffs preferred, the Court concludes that Plaintiffs' fair share of these costs is 18%.

The Court also agrees with a point made by Plaintiffs in a footnote of their response that, at this stage, any cost-sharing should be limited to the collection and production of records of eligible Bellwether Plaintiffs. Defendants knew ahead of time that only those Plaintiffs who filed claims on or before March 15, 2016, would be eligible for selection as Bellwether Plaintiffs. Any efforts by Defendants to immediately begin collecting records of Plaintiffs who filed claims after March 15, 2016, was largely for Defendants' own benefit, rather than to benefit the parties as a whole or to more efficiently advance the litigation. Therefore, the Court concludes that Plaintiffs need only pay 18% of the costs that Defendants incurred to collect and produce records of Plaintiffs who filed their claims on or before March 15, 2016, and once they do so, Plaintiffs will be permitted to access and obtain only those records.

Next, the Court will allow Plaintiffs to deduct the costs they incurred in collecting records of the same group of Plaintiffs, but only to the extent that Plaintiffs produced such records to Defendants on or before September 30, 2016.[5]

Finally, going forward, the parties shall promptly confer in good faith regarding a record collection protocol.   If Plaintiffs do not wish to share in the costs of collecting the records of Plaintiffs going forward, Defendants will have no obligation to share those records outside of their disclosure obligations under Federal Rule of Civil Procedure 26. Plaintiffs, of course, are still bound by the Court's Order requiring Plaintiffs to produce the medical records of Plaintiffs promptly after suit is filed, absent an agreement to proceed in a different fashion.   If, however, the parties decide that working from a single set of records is more efficient, they should attempt to reach agreement on an appropriate scope of collection, allocation of costs,[6] and credit for records collected and produced by Plaintiffs.

## **CONCLUSION**

For the reasons set forth above,

---

[5]     Rather than entertain further disputes as to what constitutes a timely production of records, the Court finds that September 30, 2016, is an appropriate cut-off date, as Defendants would have had at least one month to review the records produced by that date before beginning the depositions of the Bellwether Plaintiffs.  The parties' most recent status report (Doc. No. 450) suggests that the parties had not yet begun taking the Bellwether Plaintiffs' depositions by October 31, 2016, but later filings suggest such depositions had begun by November 2016.

[6]     The Court does not intend by this Memorandum and Order to indicate that allocating 18% of the costs to Plaintiffs would be appropriate on a go-forward basis.

**IT IS HEREBY ORDERED** that Defendants' motion for a protective order (Doc. No. 428) is **GRANTED in part**, as follows: (1) Plaintiffs shall pay 18% of the costs Defendants incurred in collecting and producing medical and other records of Plaintiffs who filed their claims on or before March 15, 2016, in order to access and obtain such records from Defendants' third-party vendor; (2) provided, however, that the out-of-pocket costs Plaintiffs already incurred to collect records of Plaintiffs who filed their claims on or before March 15, 2016, shall be deducted from the 18% fee Plaintiffs are required to pay, to the extent Plaintiffs produced such records to Defendants on or before September 30, 2016.

**IT IS FURTHER ORDERED** that, to the extent Plaintiffs desire to access the medical and other records of Plaintiffs collected by Defendants going forward, the parties shall promptly confer in good faith and attempt to reach agreement on an appropriate scope of collection, allocation of costs, and credit for records collected and produced by Plaintiffs.

                                                             */s/ Audrey G. Fleissig*
                                                    AUDREY G. FLEISSIG
                                                    UNITED STATES DISTRICT JUDGE

Dated this 9th day of December, 2016.