**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT D. MCCLURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Pertaining to Cases Consolidated for |
| | ) | Discovery and Pretrial Proceedings under |
| MALLINCKRODT LLC, et al., | ) | Lead Case No.  4:12CV00361 AGF |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER

Plaintiffs, through counsel, move to amend the scheduling order pursuant to Federal Rule of Civil Procedure 26 and this Court's prior case management orders.

1.   Plaintiffs respectfully request additional time, up to and including April 28, 2017, to provide supplemental expert disclosures. The supplemental disclosures, if leave is granted, will be limited solely to the following: transport mechanisms, namely, Coldwater Creek and sediment migrating in and from Coldwater Creek, and additional exposure pathways associated with all the different transport mechanisms, which are more fully described below. Plaintiffs will, if leave is granted, submit two supplemental reports, one by Nicholas P. Cheremisinoff, Ph.D., and one by James J. J. Clark, Ph.D. – both of whom submitted reports January 21, 2017.

2.   Plaintiffs' common issue expert reports disclosed January 21, 2017 focused on the air transport mechanism and exposure pathways associated solely with that transport mechanism, e.g., air inhalation. Every Plaintiff was exposed to radiation transported via air because every Plaintiff inhaled contaminated air, no matter where in the relevant geographic area he or she was located.

3.    Plaintiffs' reports did not focus to the same extent on the Coldwater Creek transport mechanism and exposure pathways associated with that transport mechanism, e.g., ingestion of water while swimming in the creek. The exposure pathways associated with the Coldwater Creek transport mechanism are far more varied and plaintiff-specific than exposure pathways associated solely with air. Plaintiffs' reports did not initially emphasize the Coldwater Creek transport mechanism and the associated exposure pathways because these pathways are so varied and individualized.

4.    The Court, however, made clear during the March 3, 2016 status conference that Plaintiffs' experts must, at the common issue stage, opine with respect to exposure pathways associated with Coldwater Creek and give a range of opinions relevant to exposure based on various scenarios, such as swimming in the creek, residing in property abutting the creek, consuming vegetation grown in soil contaminated by water that migrated from the creek, etc. Plaintiffs are asserting in these actions that Coldwater Creek was a transport mechanism, and that some Plaintiffs were exposed to radiation by pathways associated with that transport mechanism. Plaintiffs, therefore, seek to supplement their reports consistent with the Court's statements at the March 3 status conference.

5.    Plaintiffs have already generally opined about the exposure pathways associated with Coldwater Creek. In particular, Plaintiffs' expert James J. J. Clark, Ph.D., opined about 15 different uptake pathways to the human body. By way of background, Dr. Clark is utilizing GENII, which is a computer code developed for the U.S. EPA. The GENII system is a peer-reviewed program that calculates radiation exposures after alleged releases of radiation. Dr. Clark used the GENII

computer code to calculate potential radiation exposure using environmental concentrations of radioisotopes derived from dispersion modeling prepared by Plaintiffs' expert air modeler.

6.   Dr. Clark's report explains that the GENII system includes the capabilities for calculating radiation exposures following chronic and acute releases. The GENII model allows for 15 different uptake pathways, associated with one or more of the following transport mechanisms: air, surface water, ground water, and soil. The pathways, all identified in Dr. Clark's report, include animal product ingestion, food crop ingestion, aquatic food ingestion, drinking water ingestion, inadvertent shower water ingestion, inadvertent swimming water ingestion, inadvertent soil ingestion, air inhalation from atmospheric transport or resuspension outdoors, indoor inhalation of contaminants released from domestic water during showering and other uses, and infiltration from outdoors, inhalation of suspended soil from prior air or irrigation deposition, external exposure from waterborne activity while swimming, external exposure from waterborne activity while boating, external exposure from sediment activity while on shoreline, external exposure from soil activity, and  external exposure to airborne activity from atmospheric transport. For the reasons set forth above, Dr. Clark analyzed the 6 of these 15 pathways associated solely with air. Based on the discussions during the March 3 conference, Plaintiffs now seek to disclose Dr. Clark's opinions analyzing the remaining exposure pathways.

7.   Plaintiffs will promptly disclose their supplemental reports. Plaintiffs seek to supplement their reports by April 28, 2017 – just 18 days from the filing of this motion. This will provide Defendants sufficient time to digest the reports, depose the experts, designate their own experts, and file *Daubert* motions, if any, they choose to file. Plaintiffs' proposal will not create a circumstance of multiple rounds of expert reports, depositions, and motion practice on common

3

issues. Plaintiffs do not seek, and would be disadvantaged by, a bifurcated common issue process. Plaintiffs originally were of the view that it would be appropriate to address exposure pathways associated with the Coldwater Creek transport mechanism as individual issues. By this motion Plaintiffs are seeking leave to address the Court's expectations as stated at the March 3, 2017 status conference.

8.     Plaintiffs would be severely prejudiced absent leave to supplement their expert reports to the limited extent set forth in this motion. During the March 3 status conference, this Court made clear that exposure pathways not addressed at the common issue phase will not be considered by the Court during the next phase of these proceedings. Leave, therefore, is important so that Plaintiffs can fully address their exposures to radiation when the proceedings focus on individual Plaintiffs. Absent leave, Plaintiffs may be denied the opportunity to present any evidence concerning the numerous and varied exposure pathways associated with the Coldwater Creek transport mechanism.

9.     Defendants would suffer no prejudice if leave were granted. Given this absence of prejudice, even if this Court were to determine that Plaintiffs' supplemental expert reports are untimely, leave should still be granted. *EEOC v. Exel, Inc.*, No. 4:01CV154 JCH, 2002 WL 1455782, at * 1 (E.D. Mo. May 15,2002) (when there was no indication in the record of actual prejudice to defendant from untimely filing of expert disclosure, plaintiff's expert would not be struck based on noncompliance with Rule 26). In *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998), the Eighth Circuit affirmed a district court's finding that plaintiff's untimely disclosure of an expert affidavit, after the deadline for completion of expert discovery, and without attempting to obtain an extension of the deadline, was prejudicial when defendant had already

prepared a summary judgment motion based on the lack of expert opinion to support plaintiff's claims. Defendants cannot make any similar allegation here because discovery is ongoing. Defendants have not submitted their expert reports yet, and Plaintiffs' supplemental expert reports will be disclosed (if leave is granted) before expert depositions have even begun. Further, Plaintiffs propose to complete all supplementation by April 28, 2017, which a mere 18 days from the date of this filing. Further, as discussed during the March 3 status conference, the case management schedule needs to be amended for a variety of other scheduling issues that have nothing do to with Plaintiffs' proposed supplementation. In this regard, after Plaintiffs disclosed their initial reports, Defendants requested, and Plaintiffs voluntarily provided, additional technical information from their experts. Defendants and their experts are presumably reviewing Plaintiffs' expert's information now and Defendants have not yet requested deposition dates for any of Plaintiffs' experts. And while Defendants say they "have expended a great deal of time and resources reviewing Plaintiffs' incomplete common issue expert reports, only to potentially have to begin anew[]", Dkt. No. 531, Plaintiffs see no reason the original opinions or information would need reanalysis after supplementation. Plaintiffs will only be providing supplemental information. Plaintiffs are not amending or altering any opinions, information, or data already provided. Lastly, the experts seeking to provide supplementation are all experts who have previously been disclosed and submitted reports to Defendants. There is no surprise of expert or expertise in Plaintiffs' supplementation. Even if Defendants might suffer some prejudice as a result of the supplemental disclosure, preclusion of expert testimony is a drastic remedy that should be avoided whenever there are less drastic measures that are available to cure the alleged prejudice. *Johnson v. Webster*, 775 F.2d 1, 8 (1st Cir. 1985). Less drastic alternatives include giving the allegedly prejudiced party

an opportunity to redepose the experts. *Equant Integrations Services, Inc. v. United Rentals (North America), Inc.*, 217 F.R.D. 113, 116-118 (D. Conn. 2003) (court rejects drastic remedy of preclusion of testimony when redeposition of expert can cure prejudice). Given that expert depositions have yet to occur, it is clear that less drastic remedies are available for any prejudice claimed by Defendants.

For the foregoing reasons, Plaintiffs respectfully request grant them leave to submit supplemental reports as described in this memorandum by April 28, 2017 and grant such further or other relief as is appropriate.

Dated:  April 10, 2017                              Respectfully Submitted,

/s/ Kenneth J. Brennan
TORHOERMAN LAW LLC
Kenneth J. Brennan
Eric M. Terry
Tyler Schneider
Chad Finley
101 W. Vandalia Street, Suite 350
Edwardsville, IL 62025
(618) 656-4400
kbrennan@thlawyer.com
eric@thlawyer.com
tyler@thlawyer.com
cfinley@thlawyer.com
&
WALTON TELKON FOSTER
Troy E. Walton
Micah Summers
241 N. Main Street
Edwardsville, IL 62025
(618) 307-9880
twalton@waltontelken.com
msummers@waltontelken.com
&
ENVIRONMENTAL LITIGATION GROUP, P.C.
Greg Cade (*pro hac vice*)

6

Kevin B. McKie (*pro hac vice*)
2160 Highland Avenue South
Birmingham, AL 35205
(205) 328-9200
gregc@elglaw.com
larry@elglaw.com
kmckie@elglaw.com
&
BYRON CARLSON PETRI & KALB, LLC
Christopher W. Byron
Eric J. Carlson
411 St. Louis St.
Edwardsville, IL  62025
(618) 307-4054
ejc@bcpklaw.com
cwb@bcpklaw.com
ATTORNEYS FOR PLAINTIFFS

7

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2017, I electronically filed the above with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/     Kenneth J. Brennan

John McGahren
MORGAN LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
609-919-6641
609-919-6701 (fax)
jmcgahren@morganlewis.com
*Attorney for Cotter Corporation*

Ales S. Polonsky
Arnold B. Fagg
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 2004
202-739-5191
202-739-3001 (fax)
apolonsky@morganlewis.com
bfagg@morganlewis.com
*Attorneys for Cotter Corporation*

Denise Scofield
Clayton Morton
MORGAN LEWIS & BOCKIUS LLP
300 S. Grand
22nd Floor
Los Angeles, CA 90071
213-612-2500
213-612-2501 (fax)
Denise.scofield@morganlewis.com
Clayton.morton@morganlewis.com
*Attorneys for Cotter Corporation*

Dale A. Guariglia, Mo. Bar 32988
Erin L. Brooks, Mo. Bar 62764
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
314-259-2000
314-259-2020 (fax)
daguariglia@bryancave.com
erin.brooks@bryancave.com
*Attorneys for Cotter Corporation*

David R. Erickson
Steven D. Soden
Erica Ramsey
Anthony Martinez
SHOOK AND HARDY, LLP
2555 Grand Boulevard
Kansas City, MO 60816
816-474-6550
816-421-5547 (fax)
derickson@shb.com
ssoden@shb.com
eramsey@shb.com
amartinez@shb.com
*Attorneys for Mallinckrodt LLC*

8