UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SCOTT D. MCCLURG, et al.,         )
                                )
        Plaintiffs,         )
                                )
        vs.              )          Case No. 4:12-CV-00361-AGF
                                )
MALLINCKRODT, INC., et al.,      )          Lead Case
                                )
        Defendants.       )

## MEMORANDUM AND ORDER

The more than 450 Plaintiffs in these consolidated cases[1] assert "public liability

actions" under the Price-Anderson Act ("PAA"), as amended, 42 U.S.C. § 2011, et seq., for

injuries or death allegedly resulting from exposure to hazardous, toxic, and radioactive

substances handled by Defendants Mallinckrodt, Inc., and Cotter Corporation at various

times between 1942 and 1973, near Plaintiffs' residences and places of employment in

north St. Louis County, Missouri.

This case has a lengthy procedural history, which will not be recounted here except

for a few relevant prior Orders.   As will be more fully discussed below, first, in lieu of a

Case Management Order ("CMO") patterned after *Lore v. Lone Pine Corp*., No. L

33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div., Nov. 18, 1986) ("*Lone Pine*"),[2]

---

[1]   These cases have been consolidated for pretrial purposes, with the undersigned
presiding over all pretrial motions on common issues and, if appropriate, over the trials of a
representative group of Plaintiffs, before transferring the cases back to the judges to whom
the cases were originally assigned.

[2]   In *Lone Pine*, the court required the plaintiffs in a mass toxic tort action to make a
prima facie showing of exposure and causation before full discovery and other procedures
were permitted.   1986 WL 635707 (N.J. Sup. Ct. Nov. 18, 1986).

which Plaintiffs opposed, the Court ordered Plaintiffs to disclose to Defendants, within 60 days of filing suit, certain basic information about the nature of their claims, including a preliminary expert report regarding Plaintiffs' alleged exposure to radiation.   ECF Nos. 231 & 286.[3]   Second, in ruling on Defendants' prior motions to dismiss, the Court held that, although the substantive rules for decision in a public liability action under the PAA are generally derived from state law, the duty of care is defined by federal nuclear safety standards, to the extent applicable standards exist, and Plaintiffs must plead a breach of such standards to state a public liability action.   ECF Nos. 141 & 262.

Plaintiffs now move for relief from the requirement to produce preliminary expert reports (ECF No. 555), and Cotter moves to dismiss a newly-filed and consolidated member case, *Metz v. Mallinckrodt LLC*, Case No. 4:17-cv-00968, for failure to state a claim because the Plaintiff failed to plead exposure to radiation in an amount exceeding the applicable federal limit (Case No. 4:17-cv-00968, ECF No. 12).   For the reasons set forth below, the Court will deny both motions.

## BACKGROUND

According to the complaints, from 1942 to 1957, under contract with the federal government in connection with the Manhattan Project, Mallinckrodt refined and processed more than 50,000 tons of uranium at a facility in downtown St. Louis, Missouri, and then transported radioactive waste materials to an area in north St. Louis County, near the airport.   Throughout the 1960's, the radioactive waste materials were transported to a

---

[3]   Unless otherwise indicated, all citations to documents in the record refer to documents filed in the lead case, No. 4:12-cv-00361-AGF.

second site in north St. Louis County for storage.[4]   Cotter purchased the materials in 1969

and, between 1969 and 1973, Cotter stored, processed, and transported the waste to a third

site in north St. Louis County.

Plaintiffs allege that Defendants' acts and omissions during the time periods

discussed above caused the release of hazardous, toxic, and radioactive substances into the

environment in north St. Louis County, thereby contaminating the air, soil, surface water,

and ground water in areas where Plaintiffs lived and/or worked.   Plaintiffs allege that, as a

direct result of Defendants' reckless, negligent, and/or grossly negligent conduct, Plaintiffs

were exposed to radioactive substances, and that this exposure caused various forms of

cancer and, in some cases, death.

In their original complaints, the first of which was filed on February 28, 2012,

Plaintiffs failed to plead that Defendants breached an applicable federal nuclear safety

standard, and Defendants moved to dismiss the complaints on this ground.   The Court

ruled on these motions on March 27, 2013.   ECF No. 141.   Although the United States

Court of Appeals for the Eighth Circuit had not considered the issue, the Court followed

every circuit court that had considered the issue and held that federal nuclear safety

standards defined the duty of care in PAA public liability actions, and a breach of such

standards was an essential element of Plaintiffs' claims.   The Court gave Plaintiffs leave

to amend their complaints accordingly.   *Id.*

Plaintiffs' amended complaints stated that the first federal regulations creating

safety standards for the release of radioactive materials did not become effective until

---

[4]      The complaints do not indicate who transported the materials during this time.

1957, and that no applicable federal safety standards existed prior to 1957. Plaintiffs

alleged that the first federal regulations with respect to levels of radiation and

concentrations of radioactive materials in unrestricted areas open to the general public

became effective on January 1, 1961, and appeared at 10 C.F.R. §§ 20.105 and 20.106.

Plaintiffs alleged that, at this time, "the numerical radiation dose threshold regarding

members of the general public included a 500 millirem[5] per year limit."[6] ECF No. 201 at

5. All but 29 Plaintiffs specifically alleged that, "[a]s a result of Defendants' acts and

omissions," his or her "average annual exposure to radiation" during the years he or she

lived, worked, or recreated near the north St. Louis County sites "was in excess of 500

millirem." *See, e.g.*, ECF No. 201 at 6-14.

Defendants moved to dismiss these amended complaints on June 20, 2014.

Defendants did not dispute that the 500-millirem-per-year limit, derived from 10 C.F.R. §

20.105 (1961), was the applicable federal standard. Rather, Defendants argued that the 29

Plaintiffs who failed to plead a breach of that standard failed to state a public liability

action, and that the remaining Plaintiffs failed to state a public liability action because their

allegations regarding exposure in excess of that standard were too conclusory to satisfy

federal pleading standards.

---

[5]    "Doses of radiation of different ionizations are expressed in 'rems,' a unit of measurement that 'embodies both the magnitude of the dose and its biological effectiveness.'" *In re TMI*, 67 F.3d 1103, 1108 n.14 (3d Cir. 1995) (citations omitted).

[6]    Plaintiffs alleged that after 1989, the numerical radiation dose threshold regarding members of the general public dropped to 100 millirem per year. ECF No. 201 at 5.

In response to the motions to dismiss, Plaintiffs conceded that with respect to Cotter, whose conduct was alleged to have occurred between 1969 and 1973, the 29 Plaintiffs noted above failed to state a public liability action because they did not plead a breach of the 500-millirem-per-year limit. But Plaintiffs argued that the remaining Plaintiffs adequately pleaded a public liability action against Cotter.[7] The Court agreed. ECF No. 262.

While the motions to dismiss discussed above were being litigated, Defendants also requested that the Court enter a *Lone Pine* order. Specifically, because of the complexity and volume of Plaintiffs' claims, Defendants requested that the Court require Plaintiffs to substantiate their allegations regarding exposure to radiation, injury, and causation, before proceeding to full discovery. Plaintiffs opposed this request. After conferring with the parties, and in light of Plaintiffs' attorneys' repeated statements that they possessed preliminary expert reports confirming the bases for Plaintiffs' claims, the Court resolved the dispute by foregoing a full *Lone Pine* order in favor of a requirement that, within 60 days of filing suit, each Plaintiff disclose to Defendants a completed questionnaire with basic information about his or her claim, together with a signed release of medical and employment records, and the preliminary expert report referenced by Plaintiffs' counsel, subject to any appropriate protective order agreed to by the parties. ECF Nos. 231 & 286.

---

[7]  As to Mallinckrodt's conduct, Plaintiffs argued, and the Court agreed, that because the federal standards discussed by the parties did not exist at the time of Mallinckrodt's pre-1957 conduct, Plaintiffs' public liability actions regarding such conduct were not subject to dismissal for failure to plead breach of those standards. ECF No. 262.

The parties engaged in extensive negotiations regarding the level of detail to be contained in the questionnaires, particularly with regard to the sources, pathways, and doses of radioactive materials to which Plaintiffs claimed to be exposed. Plaintiffs resisted including such detailed information in the questionnaires, stating that the information would be better addressed by the preliminary expert reports that Plaintiffs agreed to provide. *See* ECF No. 241. With the assistance of the Court, the parties ultimately agreed to a more abbreviated form of questionnaire, with more detailed information regarding Plaintiffs' alleged exposure to radioactive materials to be disclosed in the preliminary expert reports. ECF Nos. 246 & 247.

On April 17, 2015, the Court also issued a phased CMO. The first phase of fact discovery, expert designations, and dispositive motions was limited to common issues that may be applicable to all or a substantial number of Plaintiffs, such as the manner in which radioactive material alleged to have caused Plaintiffs' injuries was transported to the locations where Plaintiffs were allegedly exposed; the type, amount, and level of radioactive material attributable to Defendants at the locations where Plaintiffs were allegedly exposed; and whether such level of exposure is sufficient to support a claim. ECF No. 286. The second phase was to be devoted to preparing a representative group of Plaintiffs (referred to in the CMOs as "Bellwether Plaintiffs") for individual trials, including full discovery, expert designations, and dispositive motions applicable to each Bellwether Plaintiff's claims. *See, e.g.,* ECF No. 571. At this stage, 36 potential Bellwether Plaintiffs have been selected for individual discovery and trial.

On October 31, 2016, the parties informed the Court that Plaintiffs' attorneys had stopped producing preliminary expert reports in December 2015, despite filing claims on behalf of more than 250 Plaintiffs since that time.   ECF No. 450.   At a status conference held on November 7, 2016, Plaintiffs' attorneys represented that they believed the preliminary expert reports would no longer be necessary because they would be redundant of the expert reports Plaintiffs anticipated disclosing in the common-issues phase, discussed above.   Further, according to Plaintiffs, the preliminary expert report requirement was "born out of the notion that [Plaintiffs] have to show exposure to a particular plaintiff in excess of 500 millirems . . . for post-1957 conduct" (ECF No. 459 at 27), which Plaintiffs asserted was not the correct legal standard.   After hearing argument from the parties, on November 8, 2016, the Court allowed Plaintiffs an extension of time, until after Plaintiffs produced their common-issues expert reports, to provide their overdue preliminary expert reports.   But the Court ordered that Plaintiffs must thereafter provide the reports unless, based on a motion by Plaintiffs, the Court relieved them of that requirement.   ECF No. 453.

Plaintiffs produced their common-issues expert reports to Defendants earlier this year, but they now move for relief from the requirement to produce preliminary expert reports for individual Plaintiffs.

Beginning in March 2017, Plaintiffs' attorneys also filed complaints on behalf of several new Plaintiffs, including Robert Metz, in *Metz v. Mallinckrodt LLC*, Case No. 4:17-cv-00968.   The new complaints no longer allege that each Plaintiff's exposure to radioactive material exceeded 500 millirem per year; instead, the complaints allege:

7

As a result of Defendants' acts and omissions described in this Complaint, Defendants released radiation into unrestricted areas in the environment in excess of the levels permitted by federal regulations in effect between 1957 and at least 1974. As a result of Defendants' acts and omissions described in this Complaint, Decedent was exposed to some of this radiation, and Decedent's exposure levels exceeded the normal background level.

*See, e.g., Metz*, No. 4:17-cv-00968, ECF No. 1 at 7 (Mar. 15, 2017).

The complaint in *Metz*, like many of the prior complaints in this case, alleges that

Metz worked in close proximity to the north St. Louis County sites for approximately 30

years.   The complaint likewise alleges that the applicable federal standards are set forth in

10 C.F.R. §§ 20.105 and 20.106 (1961), and that Metz developed cancer and died as a

result of Defendants' acts and omissions.   *Id.*   Cotter has moved to dismiss *Metz* for

failure to allege the breach-of-duty element of a public liability action because the

complaint fails to allege exposure to radiation in excess of an applicable federal dose limit.

## ARGUMENTS OF THE PARTIES

### Cotter's Motion to Dismiss for Failure to Adequately Plead Breach of Duty

Cotter moves to dismiss the complaint in *Metz* for failure to state a claim.   Cotter

notes that, prior to the filing of *Metz*, nearly every other Plaintiff bringing a public liability

action against Defendants, had alleged exposure to radiation in excess of the

500-millirem-per-year dose limit.   Cotter argues that *Metz* must be dismissed for failure to

include such an allegation.

In response, Plaintiffs argue that breach of duty in a PAA public liability action is

established by showing that Defendants released radiation in an amount exceeding federal

8

regulations, not that each Plaintiff was actually exposed to radiation in a specific amount.

Plaintiffs rely primarily on the case, *In re TMI*, 67 F.3d 1103 (3d Cir. 1995).[8]

In reply, Cotter argues that a pleading standard in these cases, requiring pleading of

each Plaintiff's exposure to radiation in excess of federal standards, has been in place for

over four years, and is supported by the language and history of the applicable federal

regulations.   Cotter argues that allowing Plaintiffs to deviate from that pleading standard,

as Metz has done, "would open up the potential plaintiff pool to anyone in the country who

claimed to be exposed to radioactive material at [the north St. Louis County sites] even one

iota 'above normal background levels,' eliminating any type of requirement that the

plaintiffs must have worked or lived within some reasonable proximity to the sites at

issue."   ECF No. 577 at 10.

**Plaintiffs' Motion for Relief From Preliminary Expert Report Requirement**

According to Defendants, Plaintiffs owe preliminary expert reports on behalf of

more than 240 Plaintiffs.   Plaintiffs argue that they should be relieved of this obligation

because the reports were "initially generated and produced in connection with the

perceived obligation that a plaintiff allege *exposure* in excess of 500 millirem in a one-year

period to establish a breach of duty under the [PAA] for post-1957 conduct."   ECF No.

555 at 1.   And as discussed above, Plaintiffs argue that a breach of duty in this case is

established by demonstrating releases, rather than exposure, in excess of federal standards.

---

[8]     The *TMI* litigation arose out of the 1979 incident at the Three Mile Island nuclear
facility near Harrisburg, Pennsylvania, and is among the seminal cases interpreting the
amendments to the PAA relevant here.   *See In re TMI Litig. Cases Consol. II*, 940 F.2d
832, 835 (3d Cir. 1991).

9

Plaintiffs also argue that the common-issues expert reports they recently disclosed adequately substantiate their allegations regarding breach of duty.

In response, Defendants argue that the purpose of the preliminary expert report requirement was to substantiate Plaintiffs' allegations regarding not only breach of duty but also causation. Specifically, Defendants argue that the preliminary expert reports are necessary to substantiate Plaintiffs' allegations that they were exposed to radiation in an amount sufficient to cause their alleged injuries. Defendants maintain that, if the Court relieves Plaintiffs of the preliminary expert report requirement, they anticipate renewing their request for a *Lone Pine* order.

In reply, Plaintiffs acknowledge that establishing a breach of duty was not the "sole reason" for the preliminary expert report requirement, and that "[a]nother purpose was to get more specificity with respect to causation issues." ECF No. 579 at 1. However, Plaintiffs argue that establishing breach of duty was the "primary driver" for requiring preliminary expert reports. Moreover, Plaintiffs argue that the purposes for which the disclosure requirement was imposed have been served by other means, namely, the common-issues expert reports. Plaintiffs maintain that these expert reports, along with the Plaintiff questionnaires, and the forthcoming Plaintiff-specific expert reports for the Bellwether Plaintiffs, sufficiently substantiate Plaintiffs' claims.

## DISCUSSION

### Cotter's Motion to Dismiss for Failure to Adequately Plead Breach of Duty

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

For purposes of this motion, the parties appear to agree with the Court's prior

holding that federal law defines the duty of care in a PAA public liability action, at least to

the extent applicable federal standards exist.   As to which federal standards apply to

Cotter's conduct between 1969 and 1973, the Eighth Circuit has not considered the issue,

and the Court is persuaded by the Third Circuit's reasoning in *TMI*.   In that case, after

reviewing the regulations and relevant case law, the Third Circuit held that the standards

set forth in 10 C.F.R. §§ 20.105 and 20.106,[9] control because they reflect the "considered

judgment of the relevant regulatory bodies . . . on the appropriate levels of radiation to

which the general public may be exposed."   *TMI*, 67 F.3d at 1113-14.

Section 20.105 (1969), titled "Permissible levels of radiation in unrestricted areas,"

states in relevant part:

> (a) There may be included in any application for a license or for amendment
>     of a license proposed limits upon levels of radiation in unrestricted areas
>     resulting from the applicant's possession or use of radioactive materials
>     and other sources of radiation.   Such applications should include
>     information as to anticipated average radiation levels and anticipated
>     occupancy times for each unrestricted area involved.   The commission
>     will approve the proposed limits if the applicant demonstrates that the
>     proposed limits are not likely to cause any individual to receive a dose to
>     the whole body in any period of one calendar year in excess of 0.5 rem
>     [500 millirem].

---

[9]     The Third Circuit looked to the regulations in effect at the time of the nuclear
incident at issue in that case, 1979, which are substantially identical in relevant part to the
regulations in effect between 1969 and 1973.   *See TMI*, 67 F.3d at 1113-14; 10 C.F.R.
§ 20.105 (1969), 25 Fed. Reg. 8595, 8598-99 (Sept. 7, 1960).

(b) Except as authorized by the Commission pursuant to paragraph (a) of this section, no licensee shall possess, use or transfer licensed material in such a manner as to create in any unrestricted area from radioactive material and other sources of radiation in his possession:

    (1) Radiation levels which, if an individual were continuously present in the area, could result in his receiving a dose in excess of two millirems in any one hour, or

    (2) Radiation levels which, if an individual were continuously present in the area, could result in his receiving a dose in excess of 100 millirems in any seven consecutive days.

10 C.F.R. § 20.105 (1969), 25 Fed. Reg. 8595, 8598-99 (Sept. 7, 1960).

While § 20.105 defines the levels of radiation permitted in unrestricted areas, § 20.106 defines the levels of radioactivity permitted in liquid or airborne effluents released off premises. It provides that licensees 'shall not possess, use, or transfer licensed material so as to release to an unrestricted area radioactive material in concentrations which exceed the limits specified in Appendix 'B', Table II of this part, except as authorized . . . .' Appendix B then lists more than 100 isotopes of almost 100 radioactive elements and provides the maximum permissible level of releases.

*TMI*, 67 F.3d at 1109; *see also* 10 C.F.R. § 20.105 (1969), 25 Fed. Reg. 8595, 8599 (Sept. 7, 1960).

The Court agrees with the Third Circuit that this language "does not suggest that a breach occurs only when persons are exposed to excessive radiation. Instead, the regulations provide that a breach occurs whenever excessive radiation is released, whether or not anyone is present in the area exposed." *Id.* at 1116. Of course, Plaintiffs must still plead exposure to radiation in order to establish causation and damages. *Id.* at 1118.

In a later opinion in the same case, the court in *TMI* described the elements of a public liability action of the type alleged here as follows: "(1) the defendants released radiation into the environment in excess of the levels permitted by federal regulations in

effect [at the time of the alleged nuclear incident]; (2) the plaintiffs were exposed to this radiation (although not necessarily at levels prohibited by those regulations); (3) the plaintiffs have injuries; and (4) radiation was the cause of those injuries." *In re TMI Litig*., 193 F.3d 613, 659 (3d Cir. 1999) (citations omitted), *amended*, 199 F.3d 158 (3d Cir. 2000). In light of the fact that radiation occurs naturally in the environment to some degree, the court added that the "exposure element requires that plaintiffs demonstrate they have been exposed to a greater extent than anyone else, i.e., that their exposure levels exceeded the normal background level." *Id.*

A review of the complaint in *Metz* demonstrates that the Plaintiff in that case has alleged sufficient facts to state a claim comprised of these elements that is plausible on its face. That Plaintiffs' attorneys previously chose to plead actual exposure in a specific amount, which the Court found acceptable, does not require them to continue to do so.

Neither is the Court persuaded by Cotter's argument that allowing *Metz* to go forward will expose Defendants to suit from individuals who lived far from the north St. Louis County sites. The Plaintiff in *Metz*, like the other Plaintiffs that have filed suit thus far, specifically pleads that he worked or lived in close proximity to the sites at issue for several years. Failure to include such an allegation could risk dismissal for reasons related to foreseeability. *See TMI*, 67 F.3d at 1118 n.34 (noting that the scope of the duty in a PAA public liability action "is limited to those risks which are reasonably foreseeable" and that "[t]here may be cases in which plaintiffs were located far enough away from a defendant's power plant that any injuries from excessive radiation released at the boundary of the plant would be unforeseeable"). But with respect to *Metz*, "it is entirely foreseeable

. . . to expect that any excessive radiation releases might cause harm, even if the injured were not at the precise spots where the radiation exceeded federal levels, but instead were located in areas where radiation could spread via wind, rain, or water." *Id*. The Court will deny Cotter's motion to dismiss.

## **Plaintiffs' Motion for Relief From Preliminary Expert Report Requirement**

As discussed above, the preliminary expert report requirement was the result of a compromise and was issued in lieu of a full *Lone Pine* CMO and/or more detailed Plaintiff questionnaires. The purpose of this quasi-*Lone Pine* requirement, like full *Lone Pine* orders, was to require some prima facie showing not only of exposure, but also of causation, in order to avoid unnecessary delays and expenses in this complex litigation. *See Acuna v. Brown & Root Inc*., 200 F.3d 335, 340 (5th Cir. 2000) (holding that *Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation"). Such a showing is particularly useful here, where in light of the phased discovery process, Defendants will not engage in full discovery or receive final expert reports demonstrating individual causation with respect to the hundreds of non-Bellwether Plaintiffs until a much later stage of the case.

For these reasons, the Court will not relieve Plaintiffs of the preliminary expert report requirement.[10] Because Plaintiffs suggest in their briefs that they are currently busy preparing for depositions of common-issues experts, the Court will give Plaintiffs 60 days

---

[10] If the parties wish to confer and attempt to reach agreement on a *Lone Pine* order or more detailed Plaintiff questionnaires in lieu of the preliminary expert reports, they are free to do so.

to produce the past-due preliminary expert reports, and will order that Plaintiffs continue to comply with all requirements of the CMO for newly-filed cases.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Cotter Corporation's motion to dismiss *Metz v. Mallinckrodt*, Case No. 4:17-cv-00968-AGF, is **DENIED**.   Case No. 4:17-cv-00968, ECF No. 12

**IT IS FURTHER ORDERED** that Plaintiffs' motion for relief from the requirement to produce preliminary expert reports is **DENIED**.   ECF No. 555.   Plaintiffs shall produce any past-due preliminary expert reports within **60 days** of the date of this Memorandum and Order, and shall continue to comply with the Case Management Order for all newly-filed cases, within **60 days** of the filing of the case.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 7th day of July, 2017.